Good morning, Your Honors. Good morning. May it please the Court, Mary Ann Dugan for the appellant plaintiff Rob Handy. If it pleases the Court, I would like to reserve three minutes for rebuttal. Sure, just watch your own time, please. Thank you. As you know, this case is about a dismissal without leave to amend, a dismissal with prejudice. There had been no amended pleadings. The claims are that Mr. Handy, who was at the time a Lane County commissioner in Eugene, Oregon, was locked out of his office and deprived the use of his e-mails and deprived of a place to meet with his constituents. He was locked out for seven months left of his, sorry, he still had seven months left to serve after losing the election. He was locked out just a couple weeks before the election. We have all mail in voting in Oregon, so people had just received their ballots. So it was a very interesting time for him to be deprived of his office, of the use of his office. There's a couple key errors the Court made. Number one, the Court should have allowed leave to amend because before judgment was entered, we filed a motion to amend that was very specific about what facts we would add into the allegations to clarify some issues that the judge was clearly confused about. The judge appeared to believe that Mr. Handy was simply suing over being and that is not at all what he was suing for. He was suing for the inability to actually physically use his office and his e-mails. And the Court also erred in holding that Mr. McCall, his constituent, similarly was simply suing because he was deprived of his, the right to have his preferred elected official. Ms. Celeste, Mr. McCall was based on lack of standing. Right. Why is that wrong? Well, so the standing issue for Mr. McCall, I do believe it's a much more difficult issue for the Court if that's the standing we have to rely on. First of all, as you know, if Mr. Handy has standing, it is irrelevant whether anybody else named in the case has standing. Standing for one is standing for all. And so, but, so we only reach the issue of the standing for Mr. McCall if there is no, if Mr. Handy does not have standing. There is an Eighth Circuit case that's pretty closely on point that talks about the rights of the voters to be meaningfully represented by their elected officials and that's cited in the I could not find a Ninth Circuit case that was similar. And on the Equal Protection, I acknowledge that the case law is generally about gerrymandering and those kind of voters' rights cases and that is not what we are addressing here. But the Equal Protection Clause is much broader. It speaks much more broadly than just gerrymandering. All persons similarly situated should be treated alike. As for Mr. Handy, the First Amendment claim, I think, is the easier claim to address. I'll address that first. Can I have you go back to Mr. McCall for a moment? Sure. Is your argument then that Mr. McCall doesn't have to show individualized injury? Well, he can't just say, I, like all citizens of the United States, have the right to, you know, to an elected official. He has to show some individualized injury. I just don't see any allegation that shows he was injured in any way that's different than all the other constituents. Well, he was, he was deprived of the right to, to have his elected official use his office meaningfully and exercise his duties meaningfully. And I think that How is that different than any of the other constituents? That's what Judge Wynn is trying to get at. I don't think that the law is that he has to have a different interest than anybody else who's represented by Mr. Handy. I think that the, the case law is that you just can't have general taxpayer standing or general citizen of the United States standing. If we disagree with you, would amendment be futile as to Mr. McCall then? Well, and I risk going outside the record a bit, but I do know for a fact that Mr. McCall did attempt to, to visit Mr. Handy and was told that his office was, that he was not allowed into his office. And so he actually was denied the right to actually physically visit Mr. Handy. As for Mr. Handy, his, the motion to amend, we made two motions. One was within the body of the response to the motion to dismiss. We said if, if you grant the motion to dismiss, please allow us leave to amend. Then before judgment was entered, because the order did not say whether it was with or without prejudice, I filed a motion to amend with very specific details as to the nature of Commissioner Handy's speech that was protected and the ways in which he was thwarted in carrying out his duties. And so I would submit, Your Honors, that there was certainly sufficient pleading at the, allegations at the pleading stage, if, you know, we're not trying to overcome summary judgment at this point, to, that a reasonable jury could have found on the facts alleged that he did speak and his protected speech was a cause of him being locked out of his office and deprived of the use of his office. The Ulrich case from the Ninth Circuit says the denial of even a trivial benefit is sufficient to carry a First Amendment retaliation case forward in this context. And yet here the judge dismissed saying it was a de minimis deprivation. It certainly was not de minimis. It went on for three months. The other cases cited by the defendant and by the court did not involve a deprivation of this level of benefit or privilege of the elected office. As for the view process claim, as we made clear in the motion to amend, Commissioner Stewart, at the emergency, so-called emergency public meeting the day that he, that Commissioner Handy was locked out, said that Commissioner Handy has, quote, chosen to disregard the state investigation had just begun and was not even public, much less finalized. And certainly there was no conclusion that Mr. Handy had acted illegally, and eventually he was found to not have acted illegally. He had a liberty interest in the use of his physical office and his e-mails, which is distinguished from the case law saying there's no liberty or property interest in holding the elected office itself. Thank you. One moment, please. Judge Gould, do you have additional questions? No, that's fine. Thanks. Thank you, Your Honors. Good morning. Steve Dingell, Lane County Council, here on behalf of the individually named defendants in Lane County. I want to pick up on a point that was made about Mr. McCollum's standing. The reason that I believe Judge Aiken did not allow this to go forward and replete is because he can't make an allegation that it's – that it was impossible to meet with Commissioner Handy. There's been no – first of all, there's no allegation, I point out in the complaint, that the other commissioner's access wasn't limited during this period of time. Second of all, to your point, Judge Winn, there was no allegation here that – all the counsel just stated was that he contacted Mr. Handy and found out he was locked outside of his – or locked out of his office. It's important to remember that according to the allegations made by the plaintiff, he had access to his office during regular business hours. He was not excluded from any other public place in Lane County or – His email was taken away, right? Pardon me? His email account was taken away? His email account was for a brief period of time. He did not have access to that for a couple of days. It's really hard for a lot of us to imagine walking into a room with a blank computer, essentially, without our stored email and thinking that our ability to do our jobs wouldn't be hindered. Well, I guess it depends on what you – how you define his ability to do his job, because the case cited by counsel as supporting her claim that that is part of his job is Peeper. And when you go back and look at Peeper, what that board did was make a blanket claim about a conflict of interest that prevented that person on, I believe it was an ambulance board, from voting in certain circumstances. There has been absolutely no allegation, and there couldn't be, that Commissioner Handy was excluded from any board meeting. What about his ability to respond to communicate with his constituents if he doesn't have access to his stored email account? He can talk to his – I mean, I never understood that allegation, Your Honor. Well, here's my understanding of the allegation. When I go into work in the morning, I turn on my email, and then I see who's emailed me and to whom I owe responses. Well, I think that's a matter of – the archived email is email that he has archived, that is in the past. He doesn't have access to it, right? That's like not having access to a correspondence file, whether it's electronic or paper I don't think matters, but just so that I can understand your client's response. That's how I interpret the allegation, and I welcome your response. Well, I can't go outside the record. I don't think that that is an essential – I don't think that's part – that may be part of his job, but it's not – it doesn't rise to the level that it means he can't do his job. How long did he not have access to his email account, please? I believe he only had – didn't have access to his email account for about a week. Do you have a citation to the record where – I think it's in Judge Aiken's opinion where she talks about that for about a period of a week he didn't have access to it. It's referenced in the allegation where Ms. Richardson, the county administrator, sent him a text message. Thank you. I'll check. Go ahead. Even if we agree with the district court counsel that the allegations are insufficient such that the 12b-6 motion was properly granted, why is the denial of the opportunity to replead appropriate? Leave the amend is generally liberally granted? Well, I think it depends on – well, I'll respond to that directly, Judge Winn, because I think Judge Aiken realized that the claims, when you look at, for example, his different claims – let's talk about the one involving Mr. McCall. He doesn't have a specific injury, and I think Judge Aiken recognizes he can't, I mean, he's not going to ask for a protection.  Well, but her order did not address the fertility of amendment, right? Right. For example, he's – counsel has never cited and never rebutted the cases that were cited by Judge Aiken and by the defendants that he doesn't have a protected – or that he has an interest, a legally recognized interest in either running for election or being the commissioner. That can't change. That's what he was. For example, he is an elected official. She's – the counsel has alleged what the harm is, and again, I want to stay on focus because I think at times the plaintiff has conflated the different tests between Roth, Garcetti, and the ones that are attributable to public officials, because I think those are very different tests. And when I look at what the test is for public officials when it comes to their speech and the kinds of things that they face, it's the sort of thing that comes out in the Laird decision where there's some sort of absolute prohibition and prescription that prevents them from doing it. The case cited that the plaintiff relies upon, the one about – I believe it's you versus the Democratic Committee of San Francisco. The State of California passed a law that made it a misdemeanor for the committee to endorse a primary candidate. That's exactly what they're talking about in Laird. There's nothing like that here. There's been no allegation that – and again, we're seeing shift. But what troubles me is that there are cognizable claims that elected officials have. Whether there are facts here sufficient to articulate those claims, that's a different inquiry, and that's why it puzzles me that there was no opportunity to replead. It happens all the time that you put a complaint forward and the district judge says, well, I don't think the allegations are sufficient. You go back, you take another look, you fine-tune your claims given the facts that you have, and you replead and it survives a 12B6 challenge a second time around. That happens all the time. That happens all the time, except it depends on what is lacking. And I would point out, for example, when it comes to these other – for example, the due process claim, counsel has never identified, and as we point out in our brief, a Lane County commissioner doesn't have a constitutional right, a statutory right, or even under the county's charter or administrative procedures manual to an office, to a parking spot, to e-mail, to a telephone. Counsel, if I could interject one question. I share the concern voiced by Judge Wynn. Normally we can't assess whether somebody states a valid claim in an amended claim without seeing the amended complaint and having proceedings on that. And to permit Mr. Handy to amend here wouldn't be saying that he's got a valid claim. It would just be possible. And to evaluate his amended complaint to see if it states a claim, if it doesn't, the government can move, the county can again move to dismiss, and, you know, the case moves along. But why isn't it fair just to let him submit, file an amended complaint? To respond to you, Judge Gould, I believe that the reason I think it's fair is because, again, there are certain circumstances where the claim is lacking as a matter of law. So, for example, he doesn't Do you think amendment would be futile? Is that what you're telling us? Yes. I mean, he's, here we are. We've had a motion at the trial court level where the specific, for example, just as one example, the point that I just made in terms of identify the right that you have to an office or e-mail or whatever, which didn't, there was no response to that. I think opposing counsel's point is that the district court misunderstood his claim and that his claim is that he was already an elected official with several months left on his term and that these steps that were taken prevented him from doing the job he already had. And so to Judge Gould's point, if that's the gist of it, the concern is amendment, his ability to amend to state a cognizable claim. I would disagree, or I would agree that that's the claim that's being made now. That was not the claim that was made at the time. When you look at the complaint, there's no reference to that. So her point, opposing counsel's point is they needed an opportunity to be able to amend. I don't think that's required because I just don't think he can make it. I do think it's futile. I guess that's what I'm saying is the long way or short way around. And then, counsel, how do we deal with the fact that if the district court made no finding about futility, how do we address that? Well, I think that when I read her, I believe that's implicit in her opinion and her order. I see I'm down to 38 seconds. At the end of the day, I believe this is a classic example I would submit to you. That's exactly the circumstances that when we look at the First Amendment claim and all of this, what it boils down to is an outside party sent a letter that required action on the part of the county. The board did it. He lacks the causal connection. I'm trying to run everything together here. But at the end of the day, I think that the cases that we've cited you from the city of Hackensack and Bethel are spot on. Counsel, before you leave the podium, I just have one other question about the e-mails. I don't mean to belabor the point, but I'm looking back at Judge Aiken's order. And if I'm reading it correctly, the allegation is that as of May 7th, there was the that was the interruption in the ability to access e-mail. Is that right? From May 2nd to May 3rd to May 7th, yes. Well, it says that he still didn't have the ability to access his archived e-mails by July 30th. Right. And again, I apologize if I'm not tech savvy. But what I'm trying to explain is that he had access to current e-mails. But no archived e-mails. Right. So an e-mail that he had put in archives that was in a folder would not have had access to that. So I'm trying to emphasize that he had concurrent access to information. If someone would have e-mailed him on June 1st, he would have received that e-mail and had the ability to respond to it. That's what I was trying to explain. Thank you, counsel. Thank you, Your Honors. Yes, it's true that the district court judge did not articulate that she thought it was futile to allow repleting. And, in fact, because her decision, her opinion was not clear as to whether it was even with prejudice or not, then I moved to amend, and she refused to consider the motion, clearly erroneously stating that my motion was filed after the judgment, which was not true. And that's a pure procedural issue. Is your argument there, it was just a question of when the judgment was signed and when it was entered in the computer and essentially crossing in the mail, if you will? I think that's true. I mean, yes, Your Honor. And we did, and it's not like it was a matter of moments, it was a matter of days. Right. Well, just very quickly, what I have is that the dismissal was entered March 26th. Does that sound right? Yes. On the 28th of March, it was entered in the computer. On the 28th of March, the judgment was entered as well. I'm sorry, the judgment was not entered into the document until April 3rd. Correct. In the meantime, you would file a motion to replete, I think you called it. Is that right? Correct, Your Honor. All right. Thank you. Thank you. And so, yes, you're correct that the e-mail access itself, he was entirely deprived of e-mail access for four days during a very critical period when he was just a few days from re-election, from the re-election day. And then he was deprived of access to his stored e-mails in his folders for actually three months. He was also, he did not have access to his office during regular business hours. He had access for three months to a computer in a conference room that was shared with other people, certainly not a place to meet your constituents and do your job. This is a highly fact-specific case, which just underscores why repleting should have been allowed. Mr. Dingell's brief and his argument are replete with factual assertions. And, yes, it is about being deprived of the benefits and privileges of his office during that seven months, but it's not about the right to run for re-election. So I thank you for listening, and I urge you to reverse and remand. Judge, do you have any more questions? No. Thank you. Judge Gould? None here. Thank you. All right. Thank you both for your arguments. Thank you. We appreciate it very much. That case is submitted.
judges: Gould, Christen, Nguyen